<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PAUL RICHARDSON,<br><br>        Plaintiff,<br><br>  v.<br><br>SMARTRONIX, LLC, *et al.*,<br><br>       Defendants. | Civil Action No. 25-14057 (GC) (RLS)<br><br>**<u>MEMORANDUM OPINION</u>** |

**<u>CASTNER, District Judge</u>**

      **THIS MATTER** comes before the Court upon Defendants Smartronix, LLC, Wendy Marotta and Johanna Ream's Motion to Dismiss *pro se* Plaintiff Paul Richardson's Amended Complaint (ECF No. 24) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6) or, in the alternative, to dismiss or transfer venue pursuant to Rules 12(b)(2) and 12(b)(3), and/or 28 U.S.C. §§ 1404(a) and 1406(a).  (ECF No. 41.)  Plaintiff opposed, and Defendants replied.  (ECF Nos. 45, 49.)  The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Defendants' Motion to Dismiss is **GRANTED**.

I.      **BACKGROUND**

A.      **Factual Background[1]**

1.      *Parties*

Plaintiff Paul Richardson is "a national security-cleared" expert in artificial intelligence (AI) and machine learning "with over 35 years of experience in predictive modeling, model risk governance, and real-world systems." (ECF No. 24 ¶¶ 16, 81.) Plaintiff is a resident of New Jersey and was a resident of New Jersey during the events giving rise to his Complaint. (*Id.* ¶ 31.)

Defendant Smartronix is a technology contractor that services clients in the defense, intelligence, and federal civilian sectors. (*Id.* ¶ 85.) Its headquarters are in Maryland. (*Id.* ¶ 32.) It operates Stormbreaker, which is a platform for war planning funded by the United States Department of Defense. (*Id.* ¶¶ 16, 87.) Defendant Wendy Marotta served as Program Director of Stormbreaker, and Defendant Johanna Ream served as Deputy Program Director. (*Id.* ¶¶ 33-34.)

2.      *Plaintiff is Hired by Smartronix*

In August 2023, Smartronix hired Plaintiff to work on Stormbreaker as a Principal Data Scientist with a senior leadership role. (*Id.* ¶¶ 87, 112.) Prior to accepting the job, Plaintiff discussed the long-term scope of the position with Marotta and made plans to eventually relocate to Hawaii, where the client site was located. (*Id.* ¶¶ 88-89; *see also* ECF No. 45-4.) Plaintiff was offered a retention bonus "specifically intended to offset relocation costs" that he would incur in his eventual move to Hawaii, which would vest in 2025 after two years of service. (ECF No. 24

---

[1]      On a motion to dismiss under Rule 12(b)(6), the Court must accept all alleged facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

¶ 89.)  At the start of his employment with Smartronix, Plaintiff lived in New Jersey and reported to Marotta, who was based in Hawaii.  (*Id.* ¶¶ 31, 33.)

### 3.    *Plaintiff Raises Concerns About AI Capabilities*

Stormbreaker was described to Plaintiff and promoted as an AI-enabled tool.  (*Id.* ¶¶ 90-95.)  In the first week of his employment, while attending an on-site meeting in Hawaii,[2] Plaintiff "identified serious technical and ethical red flags" to his colleagues that Plaintiff alleges "fell well below the Department of Defense standards."  (*Id.* ¶¶ 17-18, 111-13.)  For example, Plaintiff alleges that Stormbreaker "lacked a model validation plan" and claimed it had AI capabilities "far beyond what its architecture and budget could reasonably support," which risked misinforming strategic planning efforts and unintentionally escalating armed conflict.  (*Id.* ¶ 17.)  His concerns were disregarded by Smartronix employees, who started excluding and "snubbing" Plaintiff.  (*Id.* ¶¶ 18, 114.)  Plaintiff urgently sought to discuss these issues with Marotta, but Marotta offered to meet with Plaintiff only weeks later.  (*Id.* ¶¶ 115, 117-19.)

When Plaintiff met with Marotta in September 2023, he explained that "Stormbreaker by design was not fit for purpose" and articulated the various aspects of the program that "all required [AI] model governance" but lacked it.  (*Id.* ¶ 119.)  He described "the most serious issue" as needing to "build[] an agent model, not a game platform"—Stormbreaker had purportedly previously been operated by "Microsoft's online cloud game development team," and many of those employees came to Smartronix when it began managing Stormbreaker.  (*Id.* ¶¶ 100-01, 119.)  Marotta did not "question[] Plaintiff about his concerns and proposed solutions," but rather

---

[2]    Plaintiff alleges that although he worked for Smartronix from New Jersey, he "traveled to Hawaii on two occasions."  (ECF No. 24 ¶ 31.)

"disengaged and commenced a campaign of retaliation, deception, and criminal coercion, culminating in Plaintiff's wrongful termination."  (*Id.* ¶ 120.)

By October 2023, Plaintiff grew increasingly concerned about "significant AI model risk issues" and "the discrepancy between how Stormbreaker's AI capabilities were being represented and reality based on documentation he had reviewed."  (*Id.* ¶ 123.)  Plaintiff emailed Marotta and Ream to voice his concerns about AI model risk governance, inaccurate descriptions of Stormbreaker's AI capabilities, unqualified "game developers" as personnel, and the risk of "inviting our own slaughter" by "describing Stormbreaker as doing AI."  (*Id.* ¶ 124.)  Ream thanked him for his insights, but Marotta dismissed his warnings.  (*Id.* ¶¶ 125-26.)  Soon after this incident, President Joseph R. Biden, Jr. released an Executive Order that further validated Plaintiff's concerns.  (*Id.* ¶¶ 128-36.)

### 4.    *Escalation, Retaliation and Termination*

On November 9, 2023, Marotta and Ream met with Plaintiff in a purportedly secure room in Camp Smith, Hawaii.  (*Id.* ¶¶ 51, 154, 181.)  Given the secure environment, Plaintiff expanded on his concerns about Stormbreaker's AI models, including "explicit references to liability and classified considerations," and he disclosed "Top Secret information."  (*Id.* ¶ 154.)  Plaintiff alleges that the room was in fact not secure, and thus his disclosure of Top Secret information meant Plaintiff "could be falsely accused of an espionage offense for mishandling classified material," which he alleges was intended as a threat.  (*Id.* ¶¶ 52-53.)

After this meeting, Plaintiff attempted to report the meeting as a potential security violation to the United States Indo-Pacific Command (PACOM) but "was ignored."  (*Id.* ¶ 55.)  Plaintiff also filed a complaint with the Inspector General (IG) of the Department of Defense (DOD), which the IG concluded "in just four weeks."  (*Id.*)  Plaintiff alleges that these events "amplified

Plaintiff's reasonable fear of retaliatory suppression by informal networks within PACOM, resulting in significant intimidation effect." (*Id.*)

On December 11, 2023, Plaintiff emailed a distribution list, including Marotta and Ream, as well as a civilian from PACOM, and made "several weighty protected disclosures about AI model risk." (*Id.* ¶¶ 18, 148, 182.) Soon after, Marotta removed Plaintiff from the Stormbreaker organizational chart, "stripping him of all formal leadership status, reporting lines, and team affiliation." (*Id.* ¶¶ 18, 148.) Plaintiff alleges this had the effect of putting him in "professional limbo," as he was "cut off from communications" and "deprived of meaningful work." (*Id.* ¶ 18.) And despite his email, two days later, on December 13, 2023, Smartronix announced Stormbreaker had achieved "initial operational capability," which Plaintiff alleges "falsely signaled to stakeholders that the system had undergone appropriate validation and could be trusted for operational use." (*Id.* ¶ 187.)

Plaintiff further alleges that in retaliation for his "disclosures regarding AI risk and validation failures," Defendants assigned Plaintiff the task of mapping vulnerabilities in Stormbreaker. (*Id.* ¶¶ 70, 123-27.) However, Plaintiff "refused to complete this task" outside of a secure environment "due to statutory and contractual obligations concerning the handling of classified information." (*Id.* ¶¶ 70, 126-27.) Plaintiff alleges that "Defendants illegally pressured Plaintiff multiple times to complete the task, including exerting peer pressure." (*Id.* ¶ 280.) Plaintiff was "progressively isolated, demoted, and ultimately terminated on March 29, 2024, under an allegedly fabricated 'Lack of Work' (LOW) pretext." (*Id.* ¶¶ 41, 74-75, 286.)

## B.    Procedural Background

Defendants removed this case from Superior Court, Mercer County, on August 1, 2025, asserting federal jurisdiction is proper.[3]  (ECF No. 1.)  On August 12, 2025, Plaintiff filed an Amended Complaint against Marotta, Ream, and Smartronix.  (ECF No. 24.)  It asserts ten state law claims against Defendants, including equitable tolling (Count 1), two counts of criminal coercion (Counts 2 and 3), constructive discharge (Count 4), civil conspiracy (Count 5), intentional infliction of emotional distress (IIED) (Count 6), two counts of fraudulent inducement (Counts 7 and 8), wrongful termination (Count 9), and retaliation under the New Jersey Conscientious Employee Protection Act (Count 10), as well as a claim of retaliation in violation of the False Claims Act (Count 11).  (*See* ECF No. 24 at 213-249.)[4]

On August 26, 2025, Defendants filed two successive motions to dismiss, with one motion pursuant to Rules 12(b)(2) and 12(b)(3) and the other motion pursuant to Rule 12(b)(6).  (ECF Nos. 27, 28.)  On September 17, 2025, the Court directed Defendants to file a consolidated motion to dismiss.  (ECF No. 36.)  On October 8, 2025, Defendants filed the instant Motion to Dismiss, which is now ripe for review.  (ECF No. 41.)

---

[3]    In Defendants' Notice of Removal, Defendants assert that subject matter jurisdiction is proper pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442.  (ECF No. 1 at 3.)  After removal, Plaintiff amended the complaint.  (*See* ECF No. 24.)  The Amended Complaint asserts a claim under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.*  (*Id.* at 247-51.)  Therefore, the Court has subject matter jurisdiction for purposes of ruling on Defendant's Motion.  *See* 28 U.S.C. § 1331; 28 U.S.C. § 1367.  The Court does not address whether jurisdiction is proper under 28 U.S.C. § 1442.

[4]    Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

II.     **LEGAL STANDARD**

A.      **Personal Jurisdiction - Rule 12(b)(2)[5]**

For purposes of a motion to dismiss pursuant to Rule 12(b)(2), "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence[,] not mere allegations." *Patterson v. F.B.I.*, 893 F.2d 595, 603-04 (3d Cir. 1990) (citation omitted); *see Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (describing plaintiff's burden to prove that jurisdiction exists).  When the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citation omitted).  If the plaintiff meets this burden, "the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable," including through the use of extrinsic evidence. *Brainbuilders LLC v. EmblemHealth, Inc.*, Civ. No. 20-12703, 2021 WL 2025004, at *3 (D.N.J. May 21, 2021) (quoting *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016)); *see also Patterson*, 893 F.2d at 603-604 (considering extrinsic evidence submitted by the defendants and the plaintiff); *Brandywine Hosp., LLC v. CVS Health Corp.*, Civ. No. 23-1458, 2026 WL 607526, at 4 n.4 (E.D. Pa. Mar. 3, 2026) ("The court may consider matters extraneous to the pleadings in evaluating a motion to dismiss for lack of personal jurisdiction.") (citation omitted).

---

[5]     Although Defendants also move to dismiss pursuant to Rules 12(b)(3) and 12(b)(6), the Court's Opinion turns on the issue of personal jurisdiction pursuant to Rule 12(b)(2).  As such, the Court does not include the legal standard for Rules 12(b)(3) or 12(b)(6).

### B.    Pro Se Leniency

Plaintiff is proceeding *pro se* and "[t]he obligation to liberally construe a *pro se* litigant's pleadings is well-established."  *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "Courts are to construe complaints so 'as to do substantial justice,' Fed. R. Civ. P. 8(f), keeping in mind that *pro se* complaints in particular should be construed liberally."  *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citing *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003)). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'"  *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### III.    <u>DISCUSSION</u>

### A.    Personal Jurisdiction

Rule 12(b)(2) permits a defendant to move to dismiss a complaint for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  When a statute does not provide for nationwide service of process, federal courts in New Jersey exercise personal jurisdiction to the extent permitted by New Jersey law.  *See Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010) ("[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state.").

"New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution."  *Miller*, 384 F.3d at 96 (first citing N.J. Court Rule 4:4-4(c); and then citing *Charles Gendler & Co. v. Telecom Equip. Corp.*, 102 N.J. 460, 469 (N.J. 1986)).  Therefore, the key inquiry on a motion to dismiss for lack of personal jurisdiction is

8

whether, under the Due Process Clause, "the defendant has 'certain minimum contacts with . . . [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

A district court can assert either general (*i.e.*, "all-purpose") or specific (*i.e.*, "case-linked") jurisdiction over a defendant that has minimum contacts with the forum. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017). In general, a court may only exercise general jurisdiction over a defendant who is "essentially at home" in the state. *See Fischer v. Fed. Express Corp.*, 42 F.4th 366, 384 (3d Cir. 2022) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State." (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." (quoting *Goodyear*, 564 U.S. at 924)).

For specific jurisdiction, there are two primary elements that must be met. "First, there must be purposeful availment: minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state. . . . Second, the contacts must give rise to—or relate to—plaintiff's claims." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-60 (2021)). If these elements are met, the exercise of jurisdiction must "otherwise comport[] with fair play and

substantial justice." *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citation modified) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Where a plaintiff alleges an intentional tort, as Plaintiff does here, the Court further "must consider whether the application of *Calder v. Jones* . . . can change the outcome" of a minimum contacts analysis. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260 (3d Cir. 1998) (discussing *Calder v. Jones*, 465 U.S. 783 (1984)). "[U]nder *Calder* an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *Id.* The Third Circuit has articulated a three-part test for determining whether *Calder* moves the needle: "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]" *Id.* at 265-66. Importantly, "[t]he defendant must 'manifest behavior intentionally targeted at and focused on' the forum for *Calder* to be satisfied." *Id.* at 265 (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1998)). The Third Circuit has "consistently emphasized that *Calder* should be applied narrowly." *Marks v. Alfa Grp.*, 369 F. App'x 368, 370 (3d Cir. 2010).

Here, Plaintiff concedes that Smartronix is not "at home" in New Jersey for general jurisdiction purposes, and he does not appear to dispute that the Court lacks general jurisdiction over Marotta and Ream, who reside outside of New Jersey. (ECF No. 45 at 48-49; *see also* ECF No. 24 ¶¶ 33-34.) Instead, Plaintiff asks the Court to exercise specific jurisdiction over

Defendants.  (ECF No. 45 at 48-49.)[6]  Plaintiff claims specific jurisdiction over Defendants is proper for several reasons.  As to Smartronix, Plaintiff argues that it knowingly hired and onboarded Plaintiff in New Jersey; it consented to jurisdiction in New Jersey through an agreement Plaintiff signed; Plaintiff's whistleblowing activity against Smartronix occurred while he was in New Jersey; and Smartronix's retaliatory effects were experienced by Plaintiff in New Jersey.  (ECF No. 45 at 47-48.)  As to Marotta and Ream, Plaintiff argues that their conduct—including the purported deception regarding the security of the November 9, 2023 meeting room; efforts to isolate Plaintiff from meaningful work duties; obstruction of Plaintiff's efforts to resolve his concerns about working on classified matters from New Jersey; and threatening communications received by Plaintiff in New Jersey—constituted "intentional acts expressly aimed at Plaintiff" while Plaintiff was in New Jersey and "the brunt of the harm was felt" in this State.  (*Id.* at 48-49.)  Defendants assert that specific jurisdiction is lacking because they have "no connection to New Jersey," they did not purposefully direct activities at New Jersey, and Plaintiff's claims arise out of "his own unilateral activity in New Jersey."  (ECF No. 41-1 at 45-47.)

"An employee who works remotely from a home office . . . does not automatically subject his employer to the jurisdiction of his home state." *Tripp v. Ascentage Pharma Grp. Int'l*, Civ. No. 22-5934, 2023 WL 5425506, at *4 (D.N.J. Aug. 23, 2023); *see also Higgins v. Newsmax Broad. LLC*, 2024 WL 3064844, at *6 (D.N.J. June 20, 2024) ("Plaintiff's residence in New Jersey alone

---

[6]   Even if Plaintiff pursued a theory of general jurisdiction, the Court finds that it cannot exercise general jurisdiction over Defendants.  Smartronix's headquarters is in Virginia, and it is registered in Maryland.  (ECF No. 24 ¶ 32; *see also* ECF No. 41-4 ¶ 3.)  Marotta and Ream are also domiciled outside of New Jersey in Hawaii and Virginia, respectively.  (ECF No. 24 ¶¶ 33-34; ECF No. 41-3 ¶ 3; ECF No. 41-5 ¶ 3.)  Moreover, Plaintiff has not made allegations that demonstrate that any Defendant's contacts with New Jersey are so "continuous and systematic" as to render that Defendant "essentially at home" in New Jersey. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  As such, the Court cannot exercise personal jurisdiction over any Defendant.

is insufficient to find personal jurisdiction over individual employees of her former employer who do not have any other connection to New Jersey."). Indeed, for a defendant's contacts with New Jersey to confer personal jurisdiction over that defendant, "the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Crosson v. TMF Health Quality Inst.*, Civ. No. 20-18800, 2023 WL 2609048, at *6 (D.N.J. Mar. 23, 2023) (quoting *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014)) (emphasis in original). To that end, the "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (quoting *Walden*, 571 U.S. at 284-85).

Accordingly, when considering specific jurisdiction over out-of-state employers in cases brought by remote workers, courts in this district have considered the practical realities of the plaintiff's work in the forum and the defendant's relationship to the forum. For example, in *Croat v. Mission Fine Wines, Inc.*, the court found it lacked personal jurisdiction over a New York-based defendant who allowed the plaintiff to work remotely from New Jersey because the plaintiff "made the personal choice of working from her residence at times when [d]efendant did not require [her] to work in either of its offices, i.e., New York or Pennsylvania." Civ. No. 19-17786, 2020 WL 1921955, at *4 (D.N.J. Apr. 21, 2020). The court reasoned that residing in New Jersey and working from home "were unilateral decisions by [p]laintiff and not the result of deliberate direction or requirement by [d]efendant." *Id.* And in *Crosson v. TMF Health Quality Institute*, the court also found that it lacked specific jurisdiction over the out-of-state defendants—even though the defendants hired the plaintiff as a remote employee, the plaintiff worked exclusively from New Jersey, the defendants communicated with the plaintiff while he was in New Jersey, working from New Jersey was a condition of the plaintiff's employment, and the defendants provided equipment for the defendant to work from New Jersey—because the plaintiffs "[fell] short of demonstrating

12

that [d]efendants conducted any business in New Jersey or targeted New Jersey in any purposeful way beyond permitting [p]laintiff to work remotely as a matter of his own convenience." 2023 WL 2609048, at *1-6. Similarly, the court in *Higgins v. Newsmax Broadcasting LLC* followed *Croat* and *Crosson* to determine that it lacked specific jurisdiction over the defendant employees where the employees did not direct the plaintiff to work from home and rather permitted her to work from home "as a matter of convenience to her and if she so chose." 2024 WL 3064844, at *8. In each of these cases, the court found it lacked specific jurisdiction over the corporate employer and individual employee defendants despite the plaintiffs' allegations that the harm suffered occurred in New Jersey.[7]

By contrast, courts that have exercised specific jurisdiction over a corporate employer and individual employee defendants have found that the employer "purposefully availed itself of New Jersey beyond simply having [the plaintiff] as one of its remote workers." *Castillero v. Xtend Healthcare, LLC*, Civ. No. 22-02099, 2023 WL 8253049, at *11 (D.N.J. Nov. 29, 2023). In *Castillero*, the Court found specific jurisdiction existed over a corporate defendant that hired a remote employee "to work from her home in New Jersey" as part of a "COVID-19 virtual call center that served residents in the State of New Jersey." *Id.* By serving residents of the State of New Jersey through a call center based in New Jersey, the defendant took deliberate steps to reach out to do business in the State which was sufficient to establish minimum contacts. Similarly, in *Chadwick v. St. James Smokehouse, Inc.*, the court determined that specific jurisdiction over the defendants in Florida was proper because the plaintiff was hired to "perform essential functions of

---

[7]    During the events at issue, Marotta and Ream both lived in and worked from Hawaii. (ECF No. 24 ¶¶ 33-34; ECF No. 41-3 ¶¶ 3-4, 8; ECF No. 41-5 ¶¶ 3-4, 7.) Ream's current employment with Smartronix is based out of Virginia and does not require travel or work in New Jersey. (ECF No. 41-3 ¶ 5.) Marotta no longer works for Smartronix and still lives in Hawaii. (ECF No. 41-5 ¶¶ 1, 3.)

13

its business from a remote office located in New Jersey" and because the defendants regularly did business in New Jersey.  Civ. No. 14-02708, 2015 WL 1399121, at *4-5 (D.N.J. Mar. 26, 2015).

Based on these cases, the Court finds that Plaintiff has not established a *prima facie* case of specific jurisdiction because Plaintiff has not demonstrated that Defendants purposefully availed themselves of the benefits of New Jersey.  *See Crosson*, 2023 2609048, at *6.  First, Plaintiff concedes not only that Defendants sought to relocate Plaintiff to Hawaii, but also that Plaintiff himself intended to relocate to Hawaii.[8]  (*See* ECF No. 45-1 at 4 (describing a "mutually understood relocation plan").)  Plaintiff describes an "optimal home-sale window in March-April 2024" that precluded moving to Hawaii any earlier and a 90-day "pet-quarantine process" that also made "immediate relocation impossible."  (*Id.*)  Plaintiff further notes an excerpt from his offer of employment, which states that he would be "working from the client site in Honolulu, HI."[9]  (*Id.* at 6.)  Moreover, Plaintiff submitted an "onboarding email" from Smartronix that lists his "Physical Work Address" as "Remote New Jersey (Starting remote, but will be relocating to HI later this year)," indicating a mutual understanding that Plaintiff would work from New Jersey only temporarily while he prepared to relocate to Hawaii.[10]  (ECF No. 45-2 at 2, 5.)  As such, it seems

---

[8]    Although Plaintiff contends that many employees worked remotely outside of Hawaii, he does not allege that they worked from New Jersey. (ECF No. 45-1 at 7-8.)  As such, this allegation does not change the Court's analysis of purposeful availment.

[9]    Plaintiff disputes the exact location of Defendants' work site in Hawaii, but Plaintiff does not contest that Defendants worked exclusively from Hawaii. (ECF No. 45-1 at 5-6.)  More broadly, Plaintiff disputes various aspects of Defendants' affidavits. (*See generally* ECF No. 45-1.)  However, such reliability does not impact the Court's analysis because, prior to the Court's consideration of Defendants' showing of "other considerations that would render the exercise of personal jurisdiction unreasonable," *Brainbuilders LLC v. EmblemHealth, Inc.*, Civ. No. 20-12703, 2021 WL 2025004, at *3 (D.N.J. May 21, 2021) (quoting *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016)), Plaintiff must first establish a *prima facie* case of personal jurisdiction, which Plaintiff has failed to do here for the reasons stated herein.

[10]    Defendants' affidavits further acknowledge that "Plaintiff began his employment while temporarily working remotely from New Jersey" but also note that Plaintiff's employment "was

plain that the temporary remote work arrangement was for Plaintiff's convenience, like the plaintiffs in *Crosson*, *Croat*, and *Higgins*.

Second, Plaintiff has not alleged or otherwise shown Defendants' purposeful availment such that the requisite minimum contacts exist in New Jersey. In *Castillero* and *Chadwick*, the Court found that plaintiffs established purposeful availment because the defendants operated offices in New Jersey, sought to cater to New Jersey residents, and otherwise conducted business related to the plaintiff's employment in New Jersey. But here, Plaintiff argues only that Defendants targeted New Jersey by hiring and onboarding him in New Jersey, allowing him to work from New Jersey, paying for his travel to and from New Jersey, and communicating with him while he was in New Jersey. (ECF No. 45 at 47-49.) These are contacts with a "person[ ] who reside[s] [in New Jersey]," not "contacts with the forum State itself." *Walden*, 571 U.S. at 284-85. As such, the Court finds these contacts are not sufficient to establish purposeful availment.

Reliance on *Calder* does not overcome this deficiency for the intentional torts Plaintiff has pled. Though Plaintiff alleges that "the brunt of the harm was felt" in New Jersey, even where such a fact is alleged, when a plaintiff "fail[s] to allege any specific facts showing a deliberate targeting of" New Jersey by the defendant, this fact is insufficient to create personal jurisdiction over that defendant. *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007); *see also IMO Indus.*, 155 F.3d at 265 ("The defendant must 'manifest behavior intentionally targeted at and focused on' the forum for *Calder* to be satisfied." (quoting *ESAB Grp.*, 126 F.3d at 625)). As such, Plaintiff has not established specific jurisdiction over Defendants. *See Marten*, 499 F.3d at 299 ("Marten

---

not intended to be a remote position." (ECF No. 41-3 ¶¶ 6-7; ECF No. 41-5 ¶¶ 5-6.) They also aver that they and Plaintiff's other immediate supervisors were all based in Hawaii and that their "in-person interactions with Plaintiff occurred outside of New Jersey." (ECF No. 41-3 ¶¶ 8-9; ECF No. 41-5 ¶¶ 7-8.)

has alleged only that defendants harmed him while he happened to be residing in Pennsylvania.");

*IMO*, 155 F.3d at 266 ("While knowledge that the plaintiff is located in the forum is necessary to the application of *Calder*, . . . it alone is insufficient to satisfy the targeting prong of the effects test.").

Plaintiff also argues that Smartronix consented to personal jurisdiction in New Jersey through an "Employee Confidential Information and Non-Solicitation Agreement" (the Agreement). (ECF No. 45 at 34, 47, 50-51; ECF No. 45-3.) Plaintiff emphasizes a provision of the Agreement stating:

> <u>Governing Law; Consent to Personal Jurisdiction.</u>  This Agreement will be governed by the laws of the State of Residence without regard for conflicts of law principles.  If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

(ECF No. 45-3 at 2-4.)  The Court finds Plaintiff's argument unpersuasive for several reasons. First, although the provision at issue includes "Consent to Personal Jurisdiction" in its heading, there is no further language in the Agreement regarding Smartronix's consent to personal jurisdiction. (*Id.*)  In fact, the language that follows the heading relates only to a choice of law issue. (*Id.* at 4.)  Therefore, there does not appear to be consent to *personal jurisdiction* in any forum, but, rather, only consent to the laws of the "State of Residence."  Second, the document is signed only by Plaintiff—neither Marotta nor Ream nor any representative from Smartronix has signed it to suggest Smartronix consented to personal jurisdiction in New Jersey. (*Id.*)  Third, even if the clause conferred personal jurisdiction over Defendants pursuant to the terms of the Agreement, the counts asserted in this action do not arise under the Agreement, as no party is seeking to enforce the Agreement nor does Plaintiff even reference the Agreement in his Amended

16

Complaint.  (*Id.*; *see generally* ECF No. 24.)  As such, the Court finds that the Agreement does not establish personal jurisdiction over Smartronix, Marotta or Ream.

In sum, while "New Jersey has a strong interest in protecting its residents" in employment-related actions and while "[t]his need for protection is all the more true for New Jersey citizens working remotely for out-of-state employers," *Chadwick*, 2015 WL 1399121, at *6, Defendants have not purposefully availed themselves of the benefits and protections of New Jersey for this Court to exercise personal jurisdiction over them.  *See Magill v. Elysian Global Corp.*, Civ. No. 20-06742, 2021 WL 1221064, at *7 (D.N.J. Apr. 1, 2021) (granting motion to dismiss for lack of personal jurisdiction where the court found that the plaintiff's physical location in New Jersey was the only factor that connected the dispute to New Jersey and noting "[p]laintiff's claims against [d]efendants would be identical if he lived anywhere else in the world"); *Tripp*, 2023 WL 5425506, at *4-6 (granting motion to dismiss for lack of specific personal jurisdiction in a case alleging, *inter alia*, unlawful retaliation where the court found that although the plaintiff "worked remotely from his home in New Jersey, paid New Jersey taxes, collected New Jersey unemployment and disability benefits, received office equipment from [his out-of-state-based employer], and stored business-related documents in his home, those actions were not particular to New Jersey and could have occurred in any state" where the plaintiff chose to work, and thus concluding the out-of-state employer had "not purposefully availed itself of the New Jersey forum under *O'Connor* (or expressly aimed its alleged tortious conduct at the New Jersey forum under *Calder*)").

"To the extent the Court finds any factual conflict" with Plaintiff's purported *prima facie* showing of jurisdiction, Plaintiff requests jurisdictional discovery.[11]  (ECF No. 45 at 50.)

---

[11]    Although Plaintiff has not filed a formal motion for jurisdictional discovery, given Plaintiff's *pro se* status, the Court considers the request contained in Plaintiff's brief.  *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 n.9 (3d Cir. 2009) (reviewing the District Court's

However, "[a] court may deny jurisdictional discovery where the plaintiff has failed to meet its burden of making out a threshold *prima facie* case of personal jurisdiction." *Arch v. Am. Tobacco Co., Inc.*, 984 F. Supp. 830, 841 (E.D. Pa. 1997). Here, "[t]he Court chooses to exercise its discretion . . . and deny [P]laintiff's [request for jurisdictional] discovery because [P]laintiff has failed to make even a threshold *prima facie* showing that the [c]ourt has jurisdiction over the persons of [D]efendants." *Rose v. Granite City Police Dep't*, 813 F. Supp. 319, 321 (E.D. Pa. 1993); *see also Fatouros v. Lambrakis*, 627 F. App'x 84, 88 (3d Cir. 2015) (affirming denial of jurisdictional discovery because "[the plaintiff] did not present factual allegations that suggested with reasonable particularity the possible existence of the requisite minimum contacts"); *Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 206 F. Supp. 3d 1026, 1032 n.9 (E.D. Pa. 2016) (denying request for jurisdictional discovery "because the record shows that discovery would be futile as it is not likely to produce the facts needed to withstand [the d]efendants' Rule 12(b)(2) [m]otion"), *aff'd mem.*, 697 F. App'x 119 (3d Cir. 2017).[12] Rather, Plaintiff's admissions and arguments demonstrate that this Court lacks personal jurisdiction over Smartronix, Marotta and Ream.

---

denial of the plaintiffs' request for jurisdictional discovery even though the plaintiffs "never formally moved for jurisdictional discovery" and only "mention[ed] the possibility of conducing such discovery in their opposition to the motion to dismiss").

[12] Plaintiff cites *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009), in support of Plaintiff's request for jurisdictional discovery, noting that "jurisdictional discovery [is] warranted where [P]laintiff's right to relief is not 'clearly frivolous.'" (ECF No. 45 at 50.) However, the Court finds that there does not appear to be a factual conflict that would be informed by jurisdictional discovery. The Court has taken Plaintiffs allegations as true and construed inferences in favor of Plaintiff. Still, Plaintiff has failed to make a *prima facie* showing that this Court can exercise personal jurisdiction over Defendants. *See Nash v. Near N. Am., Inc.*, Civ. No. 24-6623, 2025 WL 2945551, at *3 (D.N.J. Oct. 17, 2025) (denying request for jurisdictional discovery where allegations "fail to establish that this [c]ourt's exercise of personal jurisdiction is appropriate").

Although Defendants also move to dismiss Plaintiff's Complaint under Rule 12(b)(6) for failure to state a claim and under Rule 12(b)(3) for improper venue, (*see generally* ECF No. 41-1), for the reasons discussed, the Court lacks personal jurisdiction over Defendants, and therefore the Court does not reach these arguments. *See Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 214 (D.N.J. 2020) ("[I]f personal jurisdiction is absent, the court is powerless to address the merits of the Rule 12(b)(6) motion."); *see also Doerr v. Univ. of Del.*, Civ. No. 16-2738, 2017 WL 2495169, at *2 (D.N.J. June 9, 2017) (declining to consider failure to state a claim and improper venue arguments because the court lacked personal jurisdiction over the defendants).

## B.    Transfer of Venue

Defendants argue that if the Court does not otherwise dismiss the case, the case should be transferred to Hawaii, or alternatively Maryland or Virginia. (ECF No. 41-1 at 50, 50 n.13.) Plaintiff does not contemplate a transfer and argues only that the case should not be transferred to Hawaii, given the far distance and concomitant cost and expense of litigating Plaintiff's case in that forum. (ECF No. 45 at 52-57.)

Where personal jurisdiction is lacking, a district "court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed or noticed, and the action . . . shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred." 28 U.S.C. § 1631. The Third Circuit has explained that "a district court that lacks personal jurisdiction must at least consider a transfer." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020). "To effect a transfer pursuant to § 1631, the Court must find (1) that the action "could have been brought" in the transferee district and (2) that transfer is in the interest of justice." *McIlwain, LLC v. Berman*, Civ. No. 17-1257, 2018 WL 2357745, at * 8 (D.N.J. May 24, 2018) (quoting *D'Jamoos*, 566 F.3d at 109). But "[t]he district

19

court does . . . have 'broad discretion' not to transfer." *Danziger*, 948 F.3d at 132 (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995)). And "[i]f a plaintiff may, on its own, refile its case in a proper forum, 'the interests of justice' do not demand transfer." *Id.* "Still, the court must make some findings under § 1631, at least when the parties identify other courts that might be able to hear their case." *Id.*

The Court exercises its "broad discretion" and declines to transfer this matter to any forum to allow Plaintiff, if he so chooses, to refile this case in an appropriate forum of his choosing. *Danziger*, 948 F.3d at 132. The Court finds the interests of justice do not demand transfer because neither party seeks transfer; indeed, Defendants argue for transfer only in the alternative to dismissal, and Plaintiff argues against transferring the case to Hawaii.[13] (ECF No. 41-1 at 50; ECF No. 45 at 52-57.) In *Dalal v. Clearview AI, Inc.*, the Court determined it lacked jurisdiction to hear a *pro se* plaintiff's case and declined to transfer the case, finding "no meritorious basis for transferring [the] action." Civ. No. 24-10380, 2025 WL 1726259, at *10 (D.N.J. May 1, 2025). It reasoned that the plaintiff "proffer[ed] no grounds for transferring the action [from New Jersey] . . . other than the mere fact that [the defendant's] principal mailing address is located in New York," and the plaintiff "[did] not contend that if [the] action were dismissed, [plaintiff] would be barred from bringing it in the appropriate forum." *Id.* Here, Plaintiff has made no argument in favor of a transfer, and thus, like in *Dalal*, no grounds for transferring this action have been proffered. Moreover, should Plaintiff seek to timely refile his claims in an appropriate forum, the doctrine of wrong-forum tolling or other equitable tolling may preserve his claims. *See Williams v. Tech*

---

[13]   Although the cost and inconvenience of litigating in an alternative forum may be sizable, these factors "do not entitle this court to disregard the well-established jurisdictional requirements." *Klugman v. Anderson*, Civ. No. 91-4123, 1991 WL 171392, at *2 (E.D. Pa. Aug. 30, 1991).

*Mahindra (Americas) Inc.*, No. 24-1434, 2024 WL 5055834, at \*2 (3d Cir. Dec. 10, 2024)

(describing doctrine of wrong-forum tolling).

## IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, Defendants' Motion to Dismiss

(ECF No. 41) is **GRANTED**.  An appropriate Order follows.


Dated: April 30, 2026

                    _____

                    **GEORGETTE CASTNER**
                    **UNITED STATES DISTRICT JUDGE**